IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROGER STANLEY, et al.,                  )
                Plaintiffs,          )
                      )
         vs                        ) Civil Action No. 05-68
                      )
INTERNATIONAL BROTHERHOOD OF       )
ELECTRICAL WORKERS, AFL-CIO-CLC;   )
INTERNATIONAL BROTHERHOOD OF       )
ELECTRICAL WORKERS, LOCAL 5;       )
LAUREN WARD aka LARRY WARD;        )
VERNON FORDYCE aka CHRIS FORDYCE; )
RICHARD DUNKEL; JOHN CHALOVICH;   )
DENNY EICKER; FRANK GALLAGHER;    )
DAVE CORNELIUS; RON DUNKEL;        )
MICHAEL DUNLEAVY; and WESTERN      )
PENNSYLVANIA ELECTRICAL            )
EMPLOYEES INSURANCE TRUST FUND,    )
              Defendants.          )

REPORT AND RECOMMENDATION

I. Recommendation:

        It is respectfully recommended that the motion to dismiss filed by defendant

Western Pennsylvania Electrical Employees Insurance Trust Fund (Docket No. 27) be granted,

that the motion to dismiss filed by defendant International Brotherhood of Electrical Workers,

AFL-CIO (Docket No. 35) be granted, and that the motion to dismiss submitted by defendants

International Brotherhood of Electrical Workers, Local 5, Richard Dunkel, John Chalovich,

Denny Eicker, Frank Gallagher, Dave Cornelius, Ron Dunkel and Michael Dunleavy (Docket

No. 33), joined in by defendants Lauren Ward and Vernon Fordyce per their motion to dismiss

(Docket No. 37), be granted as to the plaintiffs' federal law claims, and that the Court decline to

exercise supplemental jurisdiction over the plaintiffs' remaining state law claims.

II. Report:

        Presently before the Court are the defendants' motions to dismiss the plaintiffs' first amended complaint for failure to state a viable claim.

        The plaintiffs, Roger Stanley, Jerry Close and others, are said to be qualified journeymen and members in good standing with defendant International Brotherhood of Electrical Workers, AFL-CIO CLC ("IBEW").[1]  The plaintiffs complain that they applied for membership in defendant International Brotherhood of Electrical Workers, Local 5 ("Local 5"), but despite being members in good standing with IBEW, they were denied membership in Local 5 without just cause, and were thereby barred from participating in crucial union activities, such as attending meetings and voting.

        Local 5 is said to administer a hall hiring procedure, whereby jobs are to be allocated among qualified workers on a fair and equal basis.  The plaintiffs contend that they are not receiving a fair and equal proportion of available work and  have been assigned a secondary classification, such that they are being discriminated against; that as a result, plaintiffs Stanley and Close filed a complaint with the National Labor Relations Board ("NLRB"), protesting the unfair allocation of work assignments; and that in negotiations conducted by NLRB personnel, the parties reached an understanding that Local 5 would modify its work distribution practices so the plaintiffs and similarly-situated journeymen would receive a fair and equal opportunity for work, and the plaintiffs would withdraw their NLRB complaint.

_____

1.   In addition to Roger Stanley and Jerry Close, the other plaintiffs are Charles Taylor, Jr., Glen Mazoff, Pete Kurtz, Terry Shubert, Charles Taylor, III, Jack Taylor, Robert McMunn, William Taylor, Bill Croyle, Vincent Kovalchik, Ray Cunningham, and Nancy Irwin, Executrix of the Estate of Charles Irwin, Sr.

According to the plaintiffs, in August 2003, they withdrew their NLRB complaint, but they have not received a fair and equal opportunity for work as contemplated in the parties' understanding.  The plaintiffs also assert that following the withdrawal of their NLRB complaint, Roger Stanley and Jerry Close were subjected to threats of violence, including threats made by defendants Lauren Ward, Vernon Fordyce, Ron Dunkel and Denny Eicker.

The plaintiffs commenced this action against Local 5 and former and current business agents of Local 5, including: Richard Dunkel, John Chalovich, Denny Eicker, Frank Gallagher, Dave Cornelius and Ron Dunkel, and Local 5 President Michael Dunleavy (hereinafter, the "Local 5 defendants"), IBEW, Western Pennsylvania Electrical Employees Insurance Trust Fund (the "Trust Fund"), and  Lauren Ward and Vernon Fordyce.  In their first amended complaint, the plaintiffs assert causes of action against the Local 5 defendants and IBEW for infringement of union rights as guaranteed by the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411 (Count I), breach of contract against Local 5 (Count II), intentional interference with economic opportunities (Count III), intentional infliction of emotional distress due to the threats uttered by defendant union members against plaintiffs Stanley and Close (Count IV), unjust enrichment against IBEW, Local 5, and the Trust Fund for depriving them of sufficient hours worked to be covered by health and welfare benefits and the vesting of their pensions and retaining such monies (Count V), violation of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq., as the defendants allegedly caused the forfeiture of their welfare benefits (Count VI), and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq., as the defendants are said to have engaged in mail fraud and wire fraud in failing to comply with

NLRB directives to fairly allocate work (Count VII).  The Court's federal question and

supplemental jurisdiction are invoked.

The defendants have moved to dismiss all of the claims against them for failure to

state a viable claim.  In reviewing a motion to dismiss, all well-pleaded allegations of the

complaint must be accepted as true and viewed in a light most favorable to the non-movant.

Estelle v. Gamble, 429 U.S. 97 (1976); Shaev v.Saper, 320 F.3d 373, 375 (3d Cir. 2003).

Defendant Trust Fund's motion to dismiss:

As gleaned from the first amended complaint, the Trust Fund is said to be liable

for unjust enrichment in Count V, violation of ERISA in Count VI, and violation of RICO in

Count VII.  In its motion to dismiss, the Trust Fund argues that the plaintiffs' unjust enrichment

claim in Count V is preempted by ERISA.  We agree.

ERISA applies to and covers "any employee benefit plan" established or

maintained by any employer engaged in commerce.  29 U.S.C. § 1003(a)(1).  The parties agree

that the Trust Fund is an employee benefit plan governed by ERISA, and the plaintiffs seek

benefits therefrom based on their status as journeymen/members in good standing with IBEW.

In relevant part, 29 U.S.C. §1144(a) provides that ERISA "shall supercede any

and all state laws insofar as they may now or hereafter relate to any employee benefit plan."  The

United States Supreme Court has stated that ERISA's pre-emption clause "is conspicuous for its

breadth."  FMC Corp. v. Holliday, 498 U.S. 52, 58 (1990).  "It establishes as an area of exclusive

federal concern the subject of every state law that relates to an employee benefit plan governed

by ERISA."  Id.  State law "relates to" a benefit plan if it has any "connection with or reference

to such a plan".  Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47 (1987).  State law also "relates

4

to" a benefit plan if existence of a Plan "is a critical factor in establishing liability" under state law.  Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139-40 (1990).  In addition, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy" is pre-empted.  Aetna Health, Inc. v. Davila, 124 S.Ct. 2488, 2495 (2004).

The plaintiffs' state law unjust enrichment claim is preempted by ERISA, as it has a connection with or reference to the Trust Fund.  Specifically, the plaintiffs allege in Count V that IBEW and Local 5 -- as their collective bargaining agents -- have "obtained terms of employment on their behalf under various agreements with Western Pennsylvania Chapter National Electrical Contractors Association", including "an amount of money for each hour worked for health and welfare insurance and pension benefits"[2]; that the defendants "have imposed an arbitrary and confiscatory limit of coverage and benefits on [them] as they are required to work 400 hours per quarter to be entitled to insurance coverage... with a maximum of 1200 hours", but if they work less than 400 hours, "they must pay the difference, or forfeit hours worked", and "if they work more than 1200 hours, they lose credit for the excess and said monies are forfeited and kept by" Local 5, IBEW and/or the Trust Fund[3]; that for each hour worked, the plaintiffs "are entitled to an amount to be credited to their pension for which 1499 hours a year are required, times 5 years for said pension to vest"[4]; and that due to the defendants' actions, the plaintiffs "have been deprived of sufficient hours worked to be covered by health and welfare

---

2.   See, first amended complaint at ¶¶ 53-54.

3.   Id. at  ¶¶ 55-56.

4.   Id. at ¶ 57.

benefits and for the vesting of their pensions which monies are kept by" the defendants.[5]

Since the plaintiffs' claim in Count V has a connection with or reference to the

Trust Fund and must be adjudicated with reference thereto, the claim is preempted by ERISA.

See, 1975 Salaried Retirement Plan v. Nobers, 968 F.2d 401, 406 (3d Cir. 1992), cert. denied,

506 U.S. 1086 (1993); Shiffler v. Equitable Life Assurance Society of U.S., 838 F.2d 78, 81-82

(3d Cir. 1988); also see, Smith v. Texas Children's Hosp., 84 F.3d 152, 155 (5th Cir. 1996)

(holding that ERISA preempts a state law claim if it addresses an area of exclusive federal

concern, such as the right to receive benefits under an ERISA plan, and the claim affects the

relationship between traditional ERISA entities such as the employer, the plan and participants).

Thus, Count V should be dismissed.

The ERISA claim against the Trust Fund in Count VI also should be dismissed.

An ERISA participant or beneficiary may bring a civil action to "recover benefits due to him

under the terms of his plan, to enforce his rights under the terms of his plan, or to clarify his

rights to future benefits under the terms of the plan..." 29 U.S.C. § 1132(a)(1)(B).  However, a

federal court will not entertain an ERISA claim unless a plaintiff has exhausted the internal claim

procedures available under the plan.  Harrow v. Prudential Ins. Co. Of America, 279 F.3d 244,

249 (3d Cir. 2002); Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir. 1990).  As explained in

Harrow: "Courts require exhaustion of administrative remedies to help reduce the number of

frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to

provide a nonadversarial method of claims settlement; and to minimize the costs of claims

settlement for all concerned."  279 F.3d at 249.

---

5.    Id. at ¶ 58.

6

Here, the plaintiffs are said to have exhausted internal union remedies by grieving their complaints, which were denied.[6]  However, as to the Trust Fund, the plaintiffs insist it would be futile to exhaust its administrative remedies.

Certainly, there is an exception to the exhaustion requirement "when resort to the administrative process would be futile."  Berger v. Edgewater Steel Co., 911 F.2d 911, 916 (3d Cir. 1990), cert. denied, 111 S.Ct. 1310 (1991); accord, Harrow, 279 F.3d at 249.  However, to merit waiver of the exhaustion requirement because of futility, a claimant must "provide a clear and positive showing of futility."  Harrow, 279 F.3d at 249 (citations omitted).  Indeed, "'bare allegations of futility [are not enough]'"; rather, "a 'clear and positive' showing of futility" must be made.  Canale v. Yegen, 782 F.Supp. 963, 972 (D.N.J. 1992), quoting Makar v. Health Care Corp. of Mid-Atlantic, 872 F.2d 80, 83 (4th Cir. 1989).  Also see, Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 419 (6th Cir. 1998) (stating: "[a] plaintiff must show that 'it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision.'")(quoting Lindemann v. Mobil Oil Corp., 79 F.3d 647, 650 (7th Cir. 1996)).

Here, the plaintiffs have not made a "clear and positive showing of futility".  In their ERISA claim, they merely allege "it would be futile to exhaust internal administrative remedies of the pension plan since it would require court intervention to declare the [defendants'] challenge[d] ... policies to be unconscionable and/or confiscatory."[7]  Nowhere do the plaintiffs allege that they diligently pursued administrative relief under the Trust Fund to no avail, or that Trust Fund policies are so fixed that an appeal to it would be meaningless, or that the Trust Fund

---

6.   Id. at ¶ 34.

7.   Id. at ¶ 62.

failed to comply with its own internal administrative procedures.  See, Harrow, 279 F.3d at 250 (setting forth factors to be weighed in determining whether to excuse exhaustion on grounds of futility).  Since the plaintiffs have not pled a "clear and positive showing of futility", their ERISA claim against the Trust Fund should be dismissed for failure to exhaust administrative remedies.

The plaintiffs' RICO claim against the Trust Fund is also deficient.[8]  In their RICO claim, the plaintiffs assert that the defendants engaged in a conspiracy to defraud them of significant income and pension benefits by improperly diminishing their available work and transferring the work to non-journeyman of Local 5 or to members of its "sister locals".[9]  To further their purported scheme, the defendants are said to have engaged in a pattern of racketeering activity via acts of mail fraud and wire fraud from 1994 to the present.[10]  Thus, the defendants are said to have violated 18 U.S.C. §§ 1962(c) and (d).

As required by 18 U.S.C. §§ 1961(1) and (5), the plaintiffs have alleged the commission of at least two predicate offenses involving mail fraud and wire fraud.[11]  However, as to the Trust Fund, the plaintiffs have not pled with specificity any claims of mail fraud or wire fraud attributed to it as required under Federal Rule of Civil Procedure 9(b).

---

8.   RICO renders liable any person who uses or invests income derived from a pattern of racketeering activity to acquire an interest in or to operate an enterprise engaged in interstate commerce, 18 U.S.C. § 1962(a); or who acquires or maintains an interest in or control of such an enterprise through a pattern of racketeering activity, § 1962(b); or who, being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs through a pattern of racketeering activity, § 1962(c); or, who conspires to violate any of the subsections above, § 1962(d).  H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989).

9.   See, first amended complaint at ¶¶ 64-66.

10.   Id. at ¶¶ 71-74.

11.   Id. at ¶¶ 72, 74.

In cases as here, where plaintiffs rely on mail fraud and wire fraud as a basis for their RICO claim, "the allegations of fraud must comply with Federal Rule of Civil Procedure 9(b)". Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir. 2004), cert. denied, 125 S.Ct. 271 (2004).  Rule 9(b) provides that "all averents of fraud or... circumstances constituting fraud... shall be stated with particularity."   F.R.Civ.P. 9(b).   The Third Circuit Court of Appeals has stated that plaintiffs may satisfy Rule 9(b) "by pleading the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  Lum, 361 F.3d at 224, citing Seville Indus. Machinery v. Southmost Machinery, 742 F.2d 786, 791 (3d Cir. 1984).  Clearly, "conclusory allegations do not satisfy Rule 9(b)".  Lum, 361 F.3d at 224.  Thus, in Lum, the Court dismissed claims of mail fraud and wire fraud because they were not stated with sufficient particularity, explaining:

> [plaintiffs' allegations] do not indicate the date, time or place of any misrepresentation; nor do they provide an alternative means of injecting precision and some measure of substantiation into the fraud allegations because they do not identify particular fraudulent... transactions.  Nor do these allegations indicate which defendant(s) made misrepresentations to which plaintiff(s).

Id.

Here, the plaintiffs have not alleged any specific act of mail fraud or wire fraud attributed to the Trust Fund.  As a result, the plaintiffs have failed to state a viable § 1962(c) RICO claim against it.  Having failed to allege that the Trust Fund engaged in a specific act of racketeering activity, the plaintiffs also cannot maintain a RICO conspiracy claim against it under § 1962(d).  See, Beck v. Prupis, 529 U.S. 494, 505 (2000), where the Court held that an "injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO is not

sufficient to give rise to a cause of action... for a violation of § 1962(d)."

  For the foregoing reasons, the Trust Fund's motion to dismiss should be granted.

<u>IBEW's motion to dismiss:</u>

  As with the Trust Fund, IBEW is said to be liable for unjust enrichment (Count V) and for violating ERISA (Count VI) and RICO (Count VII).  In addition, the plaintiffs assert that IBEW infringed their union rights as guaranteed by 29 U.S.C. § 411, as it approved and ratified the acts of Local 5 to deprive them of their union rights (Count I).

  Based on our discussion above, IBEW's motion to dismiss Count V should be granted, as the plaintiffs' claim for unjust enrichment is preempted by ERISA.

  With respect to the ERISA claim against it in Count VI, IBEW moves to dismiss the claim, arguing it is not a proper defendant under 29 U.S.C. § 1132(a)(1)(B), the ERISA provision giving rise to the plaintiffs' claim.  We agree.

  As noted above, 29 U.S.C. § 1132(a)(1)(B) allows a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  However, a claim under 29 U.S.C. § 1132(a)(1)(B) may be invoked only against the plan as an entity, a fiduciary of the plan and/or the administrator of the plan.  See, e.g., <u>Curcio v. John Hancock Mutual Life Ins. Co.</u>, 33 F.3d 226, 233-34 (3d Cir. 1994); <u>Briglia v. Horizon Health Services, Inc.</u>, 2005 WL 1140687, *5 (D.N.J., May 13, 2005) (citing cases).

  IBEW is not an ERISA plan entity; and nowhere in the amended complaint is it alleged that IBEW is a plan fiduciary or administrator of the plan.  Rather, as part of their unjust enrichment claim, the plaintiffs allege that IBEW had a fiduciary obligation to them as their

collective bargaining agent in obtaining terms of their employment under various

agreements with Western Pennsylvania Chapter National Electrical Contractors Association.[12]

Such a claim does not embody an ERISA plan fiduciary.

> ERISA provides:
>
> [A] person is a fiduciary with respect to a plan to the extent
> (i) he exercises any discretionary authority or discretionary
> control respecting management of such plan or exercises any
> authority or control respecting management or disposition
> of its assets, (ii) he renders investment advice for a fee or
> other compensation, direct or indirect, with respect to any
> moneys or other property of such plan, or has any authority
> or responsibility to do so, or (iii) he has any discretionary
> authority or discretionary responsibility in the administration
> of such plan."

29 U.S.C. § 1002(21)(A).  In Curcio, supra, the Third Circuit Court of Appeals stated: "ERISA

makes clear that a fiduciary is one that maintains discretionary authority or discretionary

responsibility in the administration of the plan."  33 F.3d at 234.  Since the plaintiffs do not

allege that IBEW is a plan fiduciary or administrator of the plan, nor plead that it engages in any

of the aforesaid roles of a plan fiduciary, IBEW's motion to dismiss Count VI should be granted.

In Count VII, it is alleged that IBEW conspired to defraud the plaintiffs of income

and pension benefits by improperly diminishing their available work, and engaged in a pattern of

racketeering activity through acts of mail fraud and wire fraud in failing to comply with NLRB

directives to fairly allocate work, and in misleading the plaintiffs that their rights were being

protected.[13]  These acts are said to have violated 18 U.S.C. §§ 1962(c) and (d).

---

12.   Id. at ¶¶ 53-55.

13.   Id. at ¶¶ 64-72.

_____A civil RICO claim based upon § 1962(c) must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985).  IBEW argues that the amended complaint does not adequately plead that it engaged in a "pattern" of racketeering activity, nor assert claims of fraud against it with specificity.  We agree that the claims of fraud attributed to IBEW lack specificity.

As noted above, F.R.Civ.P. 9(b) mandates that: "all averments of fraud or... circumstances constituting fraud... shall be stated with particularity."  In Lum, supra, the Third Circuit Court of Appeals counseled that where misrepresentations are said to constitute a RICO claim, as here, the plaintiffs "must allege who made a misrepresentation to whom and the general content of the misrepresentation." 361 F.3d at 224.  In addition, the plaintiffs' claims must "indicate which defendant(s) made misrepresentations to which plaintiff(s)."  Id.

_____As to IBEW, the plaintiffs' claims of fraud do not satisfy Rule 9(b)'s specificity requirement.  With respect to purported fraudulent mailings attributed to IBEW, the plaintiffs merely allege that an unidentified officer of IBEW mailed a letter to unidentified journeymen which misrepresented that the journeymen's rights were being protected.[14]  As to IBEW's alleged acts of wire fraud, the plaintiffs contend that in 1996 and 2003, unidentified IBEW supervisors falsely communicated by telephone that an investigation had been conducted into complaints of unfair allocations of work, and that Local 5 was found to be in compliance with NLRB directives.[15]  Clearly, these claims fail to identify with specificity the person who made the communications at issue, to whom the communications were addressed, and when the

_____

14.   Id. at ¶ 69.

15.   Id. at ¶ 74a.

communications were made.  Since the fraud claims attributed to IBEW do not satisfy Rule 9(b)'s particularity requirement, the RICO claim against it should be dismissed.

In Count I, the plaintiffs contend that the Local 5 defendants conspired to deprive them of their union rights under 29 U.S.C. § 411, and that IBEW "ratified, endorsed and/or otherwise supported the discriminatory conduct of Local 5."[16]  In moving to dismiss Count I, IBEW argues that the plaintiffs' conclusory allegations of vicarious liability fail to state a claim against it.

An international union can be held vicariously liable for the unlawful conduct of its affiliated local unions if it instigated, supported, ratified, or encouraged such conduct. Brenner v. Local 514, United Bhd. of Carpenters, 927 F.2d 1283, 1288 (3d Cir. 1991).  "Mere constructive knowledge of possible illegal activity on the local level is not sufficient to impose a legal duty to intervene on the International Union."  Id. at 1289.

In determining if an international union is vicariously liable for the alleged discriminatory acts of its local union and their officers, common law agency principles apply. Scott v. Graphic Communications Intern. Union, 92 Fed.Appx. 896, 904, 2004 WL 516164 (3d Cir., Mar. 17, 2004), citing Carbon Fuel Co. v. United Mine Workers, 444 U.S. 212 (1979).  "A principal-agent relationship may not be inferred solely from affiliation between an international union and a local union."  Id.  Rather, "[t]he test to determine whether an agency relationship exists is ... balancing the character of the business affairs subject to the International's control and supervision against those left to the discretion of the local."  Scott, 92 Fed.Appx. at 905 (citations omitted).

---

16.   Id. at ¶ 38.

Absent knowledge of Local 5's degree of autonomy from IBEW, it is unclear if an agency relationship existed between them.  However, even assuming that an agency relationship existed between Local 5 and IBEW, and accepting as true the plaintiffs' claim that IBEW "ratified, endorsed and/or otherwise supported" Local 5's deprivation of their union rights, IBEW cannot be vicariously liable for Local 5's complained-of acts.  That is because (as discussed below) the plaintiffs have failed to plead a viable claim against Local 5 under 29 U.S.C. § 411.  Clearly, if no actionable claim lies against the agent, no vicarious liability for such claim can be imposed.  Sonecha v. New England Life Ins. Co., 124 Fed.Appx. 143, 146, 2005 WL 665102 (3d Cir., Mar. 23, 2005); Crawford v. Signet Bank, 179 F.3d 926, 929 (D.C.Cir. 1999) ("In the absence of agent liability..., none can attach to the principal"), cert. denied, 528 U.S. 1145 (2000); accord, DeCarlo v. Salamone, 977 F.Supp. 617, 627 (W.D.N.Y. 1997) (having ruled that local affiliate did not violate plaintiff's rights under 29 U.S.C. § 411 when it suspended him, the Court held there could be no liability imposed on international union for ratifying such conduct).

Thus, IBEW's motion to dismiss should be granted.

Local 5 defendants' motion to dismiss:

The Local 5 defendants are said to be liable under all counts of the amended complaint, and they move to dismiss each claim.  The amended complaint purports to raise three federal law claims against the Local 5 defendants, as they are said to have violated 29 U.S.C. § 411 (Count I), ERISA (Count VI) and RICO (Count VII).  For reasons discussed below, the plaintiffs' federal law claims should be dismissed for failure to state a viable claim.

In Count I, the plaintiffs complain that the Local 5 defendants violated their union rights under 29 U.S.C. § 411, because "without just cause and on the basis of arbitrary

14

considerations, even though they are fully qualified, they have been denied membership in Local

5 [and thereby] barr[ed]... from participating in crucial union activities".[17]  In moving to dismiss

Count I, the Local 5 defendants argue that the plaintiffs lack standing to bring a cause of action

under 29 U.S.C. § 411, as they are not members of Local 5.

   In pertinent part, 29 U.S.C. § 411 provides:

  (a)(1) Equal rights

   Every **member** of a labor organization shall have equal rights and privileges
within such organization to nominate candidates, to vote in elections or referendums of the labor
organization, to attend membership meetings, and to participate in the deliberations and voting
upon the business of such meetings, subject to reasonable rules and regulations in such
organization's constitution and bylaws. 29 U.S.C. § 411(a)(1) (emphasis added).

   To determine whether a person is entitled to the rights of membership under 29

U.S.C. § 411(a), we look to 29 U.S.C. § 402(o), which defines a member as follows:

> 'Member' or 'member in good standing', when
> used in reference to a labor organization, includes
> any person who has fulfilled the requirements for
> membership in such organization, and who neither
> has voluntarily withdrawn from membership nor
> has been expelled or suspended from membership
> after appropriate proceedings consistent with lawful
> provisions of the constitution and bylaws of such
> organization.

29 U.S.C. § 402(o).  "If plaintiffs are not 'members' as thus defined by § 402(o), or have not

fulfilled the requirements for membership, they have no claim to enjoyment of the 'bill of rights'

of § 411(a)(1)."  <u>Philipchuk v. Int'n. Assoc. of Bridge, Structural and Ornamental Iron Workers</u>,

1972 WL 718, *5 (D.N.J., Feb. 16, 1972), <u>aff'd</u>., 475 F.2d 1396 (3d Cir. 1973).

   The plaintiffs contend that they "are members in good standing with [IBEW]" and

---

17. Id. at ¶ 28.

15

"have been members of other IBEW locals", not Local 5; that nonetheless, they "are members of Local 5 within the meaning of 29 U.S.C. § 402(o), in as much as they have fulfilled the requirements of membership"; and that "even though they are fully qualified, they have been [unjustly] denied membership in Local 5".[18]

      The Third Circuit Court of Appeals has held: "where a person has fulfilled all of the requirements for membership actually prescribed by a labor organization he is a member as defined by Section 3(o)." Hughes v. Local No. 11 of Int'n. Ass'n. of Bridge, Structural and Ornamental Ironworkers, 287 F.2d 810, 817 (3d Cir. 1961), cert. denied, 368 U.S. 829 (1961).  In Hughes, the plaintiff was a member in good standing with the International Union who requested a transfer from Local 489 to Local 11; he was given an "informal permit" to work by Local 11 pending his transfer, but he was not given a "formal permit" of the kind set forth in the International Union's constitution.  287 F.2d at 812.

      The Hughes Court found that the plaintiff sufficiently alleged the fulfillment of all requirements for membership, because he pled that all requirements for membership in Local 11 were contained in the International Union's constitution, and that he had complied with all such requirements. Id. at 815.  Importantly, the Hughes Court stated:

> [T]he alleged fact that the constitution of the International sets forth each and every requirement for transfer is, in effect, an allegation that Local 11 has no discretionary power to refuse membership to persons fulfilling the constitutional requirements. **Thus, this case may be distinguished from the ordinary case of an application for membership in a voluntary association on the ground that there was not in this case a reservation of power by the organization to refuse membership, in its discretion, to those who have fulfilled its standard membership requirements.**

---

18.   Id at ¶¶ 27-28.

Id. at 816 (emphasis added).

As recognized in Hughes, "nothing in the Act, Section 3(o) included, was intended to dictate, in any manner, the requirements that a labor organization may lay down with respect to the acquisition of membership." Id. at 817.  Since Local 11 had no discretion to refuse membership to the plaintiff in Hughes, the Court found he was a member "in substance", even though Local 11 officials had not performed the "ministerial acts" of formally admitting and recognizing him as a member.  Id. at 815.

In this case, it is significant that Local 5 has discretion to accept or deny requests for transfers of membership pursuant to IBEW's constitution.  In pertinent part, Article XXIII, Section 5 of IBEW's constitution provides: "Each L.U. [Labor Union] shall have full autonomy to accept or reject all requests for transfers."[19]

Where as here, an international union's constitution cloaks local affiliates with discretion to accept or reject transfer applications, and an applicant's membership is denied, Courts hold that the rejected applicant is not a "member" of the local union and is not entitled to the rights set forth in 29 U.S.C. § 411(a)(1).  Gavin v. Structural Iron Workers Local No. 1, 553 F.2d 28, 30-31 (7th Cir. 1977); Bullock v. Sweeney, 644 F.Supp. 507, 509 (N.D.Ca. 1986), aff'd., 823 F.2d 554 (9th Cir. 1987); Philipchuk, supra, 1972 WL 718, *7, aff'd, 475 F.2d 1396 (3d Cir. 1973).

_____

[19].   See, Exhibit A (at p. 66) which is attached to the Local 5 defendants' brief in support of their motion to dismiss.  Our review of IBEW's constitution does not convert the defendants' present motion to one for summary judgment, for "a defendant may supplement the complaint by adding exhibits such as public records and other indisputedly authentic documents underlying the plaintiff's claims."  Sentinel Trust Co. v. Universal Bonding Ins. Co., 316 F.3d 213, 216 (3d Cir. 2003).

In <u>Philipchuk</u>, the Court distinguished the case in <u>Hughes</u>, where a local union

had no discretion to refuse membership, from cases as here, where local unions are afforded

discretionary power to accept or reject transfers of membership, stating:

> There is this significant and determinative difference... The
> constitution, as involved in <u>Hughes</u> ... required for transfer
> from one local to another only issuance of a valid clearance
> card by the 'old' local, and acceptance thereof by the 'new'
> one, and since there were no provisions in the constitution
> for rejection by the 'new' local of any transfer applications,
> acceptance thereof was deemed by the Court of Appeals in
> <u>Hughes</u> to be a simple ministerial act, and not a requirement
> for membership.
>
> In 1968, however, the constitution was amended ... This
> amendment served to create and establish a meaningful step
> in the transfer process, namely, each Local was thereby
> granted an autonomous right, one not alien to the labor union
> movement, of voting upon those seeking admission to its
> membership.  The power thus created, to accept or reject,
> means simply this: no longer can it be said that acceptance by
> a local of an applicant for transfer is a mere ministerial act.

1972 WL 718, *7.

Thus, in <u>Philipchuk</u>, when plaintiffs' applications to transfer membership were

rejected by the local union pursuant to the discretion afforded it under the international

constitution, the Court held that the plaintiffs were not "members" of the local union as defined

by § 402(o), notwithstanding the fact that they were members in good standing with the

international union.  This ruling was affirmed by the Third Circuit Court of Appeals in

<u>Philipchuk</u>.  475 F.2d 1396 (3d Cir. 1973).  Also see, <u>Moynahan v. Pari-Mutuel Employees Guild</u>

<u>of CA</u>, 317 F.2d 209, 210 (9th Cir. 1963), <u>cert.</u> <u>denied</u>, 375 U.S. 911 (1963) (holding that rejected

union member had no rights under 29 U.S.C. § 411(a)(1) because: "One of the Union's

requirements for membership... is a two-thirds favorable vote of the current members.  This

18

requirement has never been met by appellant, and can hardly be characterized as a mere formality or ministerial act").

Here, since Local 5 rejected the plaintiffs' requests for transfer of membership in accordance with the discretionary authority afforded it under IBEW's constitution, the plaintiffs are not "members" of Local 5. Hence, the Local 5 defendants' motion to dismiss Count I should be granted.

The ERISA claim in Count VI against the Local 5 defendants also should be dismissed, as they are not proper defendants under 29 U.S.C. § 1132(a)(1)(B), the ERISA provision giving rise to the plaintiffs' claim. As discussed above, a claim under 29 U.S.C. § 1132(a)(1)(B) may be invoked only against the plan as an entity, a fiduciary of the plan and/or the plan administrator. Curcio v. John Hancock Mut. Life Ins. Co., 33 F.2d 226, 233-34 (3d Cir. 1994); Briglia v. Horizon Health Services, 2005 WL 1140687, *5 (D.N.J., May 13, 2005).

Needless to say, the Local 5 defendants are not an ERISA plan entity, and the plaintiffs do not allege they are plan fiduciaries or administrators of the plan. Indeed, "ERISA makes clear that a fiduciary is one that maintains discretionary authority or discretionary responsibility in the administration of the plan." Curcio, supra, 33 F.3d at 234. Since the Local 5 defendants are not said to have had discretion in administering the Trust Fund, their motion to dismiss Count VI should be granted.

The plaintiffs' RICO claim in Count VII, alleging that the defendants engaged in a "pattern" of racketeering activity, also fails to state a viable claim. Under RICO, a "pattern" of racketeering activity must involve "at least two acts of racketeering activity" within a ten year period. Tabas v. Tabas, 47 F.3d 1280, 1290 (3d Cir. 1995), cert. denied, 515 U.S. 1118 (1995),

citing 18 U.S.C. § 1961(5).  Further, the racketeering activity must be "related *and* amount to or pose a threat of continued criminal activity."  Tabas, 47 F.3d at 1292, quoting H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989) (emphasis in original).  Alleged racketeering predicates are "related" if they have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."  Tabas, 47 F.3d at 1292.  They amount to "continued criminal activity" where it is shown that related predicate acts extend over a substantial period of time, or project into the future with a threat of repetition.  Id.

      Significantly, to prevail on their RICO claim, the plaintiffs must allege and show that each defendant engaged in a pattern of racketeering activity.  See, Banks v. Wolk, 918 F.2d 418, 421 (3d Cir. 1990) (stating: "no defendant can be liable under RICO unless he participated in two or more predicate offenses sufficient to constitute a pattern").  Here, the plaintiffs have not adequately pled that the Local 5 defendants engaged in a pattern of racketeering activity.  Further, they have not set forth their claims of fraud with specificity.

      In the amended complaint, there is not one specific act of mail fraud attributed to the Local 5 defendants.  Rather, the plaintiffs merely allege that "[t]here are numerous predicate acts of mail and wire fraud relating to [them]."[20]  Our Court of appeals has emphasized that such conclusory allegations fail to satisfy Rule 9(b)'s particularity requirement.  Lum, supra, 361 F.3d at 224.

      In addition, the plaintiffs' claims of wire fraud are deficient under RICO.  Under 18 U.S.C. § 1343, wire fraud entails "any scheme or artifice to defraud... transmitted by means of

_____

20.   See, first amended complaint at ¶ 72.

wire... in interstate or foreign commerce".  Clearly "[t]he federal wire fraud statute ... requires

<u>interstate</u> use of the wire."  <u>Puricelli v. Estate of Bachman</u>, 1995 WL 447474, *3 (E.D.Pa., July

27, 1995), <u>aff'd.</u>, 111 F.3d 127 (3d Cir. 1997) (emphasis added).  "Since intrastate use of the wire

for fraud cannot constitute wire fraud, it follows that these same acts cannot serve as predicate

acts in a RICO complaint."  <u>Id.</u>

      Here, it is alleged that all of the plaintiffs and Local 5 defendants are domiciled in

Pennsylvania.[21]  While the plaintiffs make conclusory allegations that unspecified parties made

numerous telephone calls falsely suggesting that work allocations were proper[22], such allegation

fails to comport with Rule 9(b) and does not indicate if a telephone call crossed a state line.  In

the few claims that identify a Local 5 defendant making a telephone call to a plaintiff, nowhere is

it alleged that the defendant used the interstate wires.[23]  Absent specific allegations that the Local

5 defendants used the interstate wires for fraud, the phone calls attributed to them are not RICO

predicate acts.  See, <u>Puricelli</u>, <u>supra</u>, 1995 WL 447474, *4.  Thus, the plaintiffs' RICO claim

should be dismissed.

      For reasons discussed above, the Local 5 defendants' motion to dismiss should be

granted on the plaintiffs' federal law claims.  In the absence of a viable federal claim, this Court

should decline to exercise supplemental jurisdiction over the plaintiffs' remaining state law

claims.  <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 725 (1966); 28 U.S.C. § 1367(c)(3).

---

21.   Id. at ¶¶ 1-14, 16-26.

22.   Id. at ¶ 74(b).

23.   Id.

Therefore, it is recommended that the motion to dismiss filed by the Trust Fund be granted, that the motion to dismiss submitted by IBEW be granted, and that the motion to dismiss filed by the Local 5 defendants, joined in by defendants Ward and Fordyce, be granted as to the plaintiffs' federal law claims, and that the Court decline to exercise supplemental jurisdiction over the plaintiffs' remaining state law claims.

Within ten (10) days after being served with a copy, any party may serve and file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,


s/ROBERT C. MITCHELL
United States Magistrate Judge

Dated: July      2005